# IN THE COURT OF APPEALS OF IOWA

No. 18-1848
Filed April 29, 2020

**DANIEL LEE JENSEN,**
        Plaintiff-Appellant,

**vs.**

**KARLA RUTH BACCAM,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Calhoun County, William C. Ostlund,

Judge.

Daniel Jensen appeals from denial of his application for contempt.

**AFFIRMED.**

Daniel Lee Jensen, Fair Oaks, California, self-represented appellant.

Joel Baxter of Wild, Baxter & Sand, P.C., Guthrie Center, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

Daniel Jensen appeals from the denial of his application for contempt. Finding Daniel either failed to preserve error or raised arguments having no merit, we affirm.

**Rules of Appellate Procedure and Briefing.** Daniel is self-represented. His appellate filings, both briefs and appendix, are deficient in many ways. It would serve no useful purpose to lay out all the deficiencies here, but a few stand out. Daniel employs Roman numerals for his appendix page numbers. Use of Roman numerals is specifically prohibited. Iowa R. App. P. 6.905(3)(c) (pages must be consecutively numbered using Arabic whole numbers). The exhibits listed in the appendix table of contents were given novel identifiers and no descriptors. Iowa R. App. P. 6.905(4)(c) (exhibits must be identified by the number or letter as marked in the district court and a concise description of each exhibit is required). Daniel's failure to follow the rules made it unnecessarily difficult to navigate the appendix.

His brief includes no statement of the issues presented for review, no routing statement, no statement addressing how he preserved the issues for review and where they were raised and decided in the district court, and no scope and standard of review statement. Iowa R. App. P. 6.903(2)(c), (d), (g)(1), (g)(2).

Self-represented or not, parties to an appeal are expected to follow applicable procedural rules. The rules apply equally to parties represented by counsel and to those who are not. *In re Estate of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App. 1997) ("Substantial departures from appellate procedures cannot be permitted on the basis that a non-lawyer is handling [his or] her own appeal.").

Self-represented parties receive no preferential treatment.  *See Hays v. Hays*, 612 N.W.2d 817, 819 (Iowa Ct. App. 2000).  "The law does not judge by two standards, one for lawyers and the other for lay persons.  Rather, all are expected to act with equal competence.  If lay persons choose to proceed pro se, they do so at their own risk."  *Metro. Jacobson Dev. Venture v. Bd. of Review*, 476 N.W.2d 726, 729 (Iowa Ct. App. 1991).

As we have said:

> Rule infractions are not a trivial matter.  A party's disregard of the rules may lead to summary disposition of the appeal or waiver of an issue.  *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 239-40 (Iowa 1974).  Additionally, we refuse to assume a partisan role and undertake a party's research and advocacy when a party's failure to follow the rules would require us to do so to reach the merits of the case.  *Id.* at 240.  Furthermore, this court's principal role is to dispose justly of a high volume of cases. Iowa Ct. R. [21.11].  A party's noncompliance with the rules of procedure hinders our effort to meet this mandate.  On the other hand, observance of the rules promotes judicial efficiency because uniformity and consistency ease navigation and analysis of the thousands of briefs the court makes its way through each year.

*State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013).

Daniel also makes many unsupported conclusory statements in his argument.  "When a party, in an appellate brief, fails to state, argue, or cite to authority in support of an issue, the issue may be deemed waived."  *State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. 2001); *see also* Iowa R. App. P. 6.903(2)(g)(3) (requiring the argument section to include "[a]n argument containing the appellant's contentions and the reasons for them with citations to the authorities relied on and references to the pertinent parts of the record" and stating "[f]ailure to cite authority in support of an issue may be deemed waiver of that issue"); *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997); *Metro. Jacobson Dev. Venture*,

476 N.W.2d at 729. We do not consider conclusory statements unsupported by legal argument. *See, e.g.*, *Baker v. City of Iowa City*, 750 N.W.2d 93, 103 (Iowa 2008) (holding a party waived its "conclusory contention" by failing to support it with an argument and legal authorities). We will not accept the task of undertaking Daniel's research and advocacy. *See id.*; *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

And we do not consider any self-serving statements not a part of the record. *See* Iowa R. App. P. 6.801; *Rasmussen v. Yentes*, 522 N.W.2d 844, 846 (Iowa Ct. App. 1994) (noting we do not consider facts that are not part of the record); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded.").

Lastly, Daniel refers to the many filings and events after the October 1, 2018 hearing and ruling. We confine our review to the record made before the district court at that hearing. *See State v. Boggs*, 741 N.W.2d 492, 505 n.2 (Iowa 2007) ("It is a fundamental principle that our review of district court rulings is limited to the record made before the district court."); *Keith*, 513 N.W.2d at 771 ("We are limited to the record before us and any matters outside the record on appeal are disregarded."). Thus, events after the hearing are beyond the scope of the proper record on appeal, and we do not consider them. *See Keith*, 513 N.W.2d at 771.

**Procedural History.** This case, having spawned four appeals, has a long and tortured history that need not be repeated in detail here. A 2005 divorce decree granted in Clark County, Nevada dissolved the parties' marriage. The

parties were awarded joint legal custody of their minor child, then one and one-half years old. Karla Jensen, now Baccam, received primary physical care of the child subject to Daniel's rights of supervised visitation. At some point Karla relocated to Iowa and Daniel to California. In 2017 Daniel applied to modify the decree asking that he be granted unsupervised parenting time and phone contact with the child. This led to a court-approved stipulation when the parties agreed that (1) Karla would pay up to $750 for Daniel's and his mother's airfare to travel to Iowa so Daniel could exercise his visitation rights in 2018, (2) Daniel would have unrestricted phone communication with the child, and (3) Daniel would be added to the child's birth certificate and listed as the child's father, with Karla completing the necessary paperwork, and a copy of the new birth certificate furnished to Daniel.

In June 2018, Daniel sought to have Karla found in contempt for violating the stipulation alleging Karla failed to pay the airfare, restricted his communication with the child, interfered with his relationship with the child, and failed to obtain a new birth certificate. After a hearing, Karla was found in contempt for her failure to allow Daniel unrestricted phone communication with the child, but she was found not in contempt related to the birth certificate and payment of the plane ticket. After his post-ruling motions were denied, Daniel appealed. The appeal was dismissed for failure to cure a default.

The same day he appealed, Daniel again sought to have Karla found in contempt, raising the same issues as before. It is this application, later amended, that is the subject of this appeal. A hearing took place with Daniel participating by

telephone. Neither party was represented by counsel. The court found neither party in contempt. Daniel appeals.

The district court's observations are particularly apt and set out the context of this dispute.

> The Court recognizes the frustration of both [Daniel] and [Karla] and is sympathetic to both of their positions. The parties should understand that this Court is also frustrated by the ongoing acrimony.
>
> In reviewing the exhibits provided by [Daniel], there is a constant and consistent pattern of frustrated visitation and communication. There is also evidence of substantial animus between [Daniel] and [Karla] and unfortunately this has carried over to hostility between the minor child and Daniel. Daniel has directed the Court's attention to the allegation of behavior that amounts to "malicious" behavior on [Karla]'s part and how it can fragment and often destroy relationships. This Court is mindful of that. This Court has been very harsh with parents who have purposely used this approach as a custodial tactic.
>
> On the other hand, [Karla] defends her actions as protecting her daughter from Daniel's behavior and the resultant, ever-increasing distrust and anger with her father.
>
> The Court believes that the most poignant piece of evidence is contained in an exhibit offered and authored by [the child] herself. The first sentences read, " I need to get to know you. You are rushing me and its ruining it." She further identifies other issues that are complicating things. She speaks of her dad's bad mouthing her mom, her uncomfortableness because of this, her dad's childish and angry behavior. These statements by [the child] represent symptoms of the problems that are going on. Certainly this is exacerbated by horrible communications between the parties. The Court has little doubt that Daniel would like a relationship with his daughter. The Court suggests that this may be driven by an overzealous passion rather than necessary patience. There is evidence that Karla has tried to accommodate Daniel, but at this point there is little relationship to resurrect.
>
> In view of the evidence offered and the exhibits considered, the Court finds that both parties are contributing to the unfortunate circumstances as they exist today. This Court has always favored a relationship between children and both of their parents. To that end, the Court is directing the parties to re-double their efforts if for no other reason the benefit of the child. The Court would remind [Karla] that she is still obligated to provide transportation for a visitation; and, absent a good faith showing of her inability to pay, the Court may revisit this issue.

All of this is magnified by the inability of both parties to assist themselves financially. [Daniel] is unable to travel and has no money to travel to Iowa. . . . [Karla] currently is without funds as well. Neither have attorneys.

Since entry of the October 5, 2018 contempt ruling and the appeal from it, Daniel's filings continued in the district court, including a motion construed to be an application for contempt. Daniel appealed from a June 2019 order dismissing and denying his motions. That appeal is pending, No. 19-1137. After another series of district court filings, Daniel filed another appeal In November 2019. Treating the notice of appeal as a petition for certiorari, the supreme court refused the writ.

The appeal at hand concerns only the October 5, 2018 order denying Daniel's August 20, 2018 amended application for contempt.

**Scope and Standard of Review.** In contempt cases, "If it is claimed that a ruling is not supported by substantial evidence, 'we examine the evidence, not de novo, but to assure ourselves that proper proof supports the judgment.'" *State v. Lipcamon*, 483 N.W.2d 605, 606 (Iowa 1992) (citations omitted); *see also Den Hartog v. City of Waterloo*, 891 N.W.2d 430, 435 (Iowa 2017). We review constitutional issues de novo. *Keener v. Iowa Dist. Ct.*, No. 14-1462, 2015 WL 3624392, at *1 (Iowa Ct. App. June 10, 2015).

The party applying for a rule to show cause bears the burden to prove beyond a reasonable doubt that the alleged contemner had a duty to obey a court order and willfully failed to perform the duty. *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995). To establish willful disobedience, the applicant's evidence must show "conduct that is intentional and deliberate with a bad or evil purpose,

or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Gimzo v. Iowa Dist. Ct.*, 561 N.W.2d 833, 835 (Iowa Ct. App. 1997) (quoting *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744 (Iowa 1993)).

Iowa Code section 598.23 (2018) provides

> 1. If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person *may* be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.
> 2. The court *may*, as an alternative to punishment for contempt, make an order . . . .

(Emphasis added.) *See also In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). Use of the word "'may' confers a power." Iowa Code § 4.1(30)(c); *see also Swan*, 526 N.W.2d at 327. So the district court "is not required to hold a party in contempt even though the elements of contempt may exist." *Swan*, 526 N.W.2d at 327. Ultimately, the district court has "broad discretion and unless this discretion is grossly abused, the trial court's decision must stand." *Id.* (cleaned up).

**Discussion.** For the first time on appeal, Daniel argues his constitutional due process rights were violated when the court had in front of it only Karla's exhibits that she brought to the hearing and had none of the exhibits Daniel had previously efiled. But Daniel did not raise this argument in the district court before filing his appeal.

"Our error preservation rules provide that error is preserved for appellate review when a party raises an issue and the district court rules on it." *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 20-21 (Iowa 2013); *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (noting we do not consider issues

raised for the first time on appeal). "[O]ur error preservation rules are not designed to be hypertechnical . . . ." *See Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 695 (Iowa 2013). Rather, they exist to ensure that district courts have the opportunity to correct or avoid errors and to provide appellate courts with a record to review. *See State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003). We find Daniel has not preserved this issue for our review.

Even if the issue were properly before us, we find Daniel misconstrues the record. To be sure, in reading the transcript of the hearing, it appears the court could not locate and pull up Daniel's exhibits from the Electronic Document Management System (EDMS) at the hearing. During the hearing the court specifically stated, "I am going to take a look at these [referring to Daniel's] exhibits and I will enter an order." And it is clear that the court did indeed consider Daniel's exhibits in ruling on his application. The order states, "The court has considered the testimony and arguments of the parties *and the exhibits included in the file*." (Emphasis added). And the court stated, "The Court was directed to the exhibits offered by [Daniel]. *The court has read them as requested and required*." (Emphasis added). Later in the order, "In reviewing the exhibits provided by [Daniel], there is a constant and consistent pattern of frustrated visitation and communication." Daniel's argument is baseless.

Daniel next alleges the district court had an ex parte communication with Karla before Daniel joined the hearing by telephone and also after the hearing concluded. Daniel's allegations appear to stem from speculation. With just Daniel's conjecture, the record is too undeveloped to make any meaningful appellate review.

Daniel's third issue is just a listing of legal name change and plane ticket issues. He makes no argument or contentions and cites no authorities. "Failure to cite authority in support of an issue may be deemed waiver of that issue." Iowa R. App. P. 6.903(2)(g)(3).

> In order to address this issue under these circumstances, we would be obliged "to assume a partisan role and undertake the appellant's research and advocacy." *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) (dismissing an appeal based on appellant's failure to cite any authority); *accord Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) (stating "we will not speculate on the arguments [the defendant] might have made and then search for legal authority and comb the record for facts to support such arguments"); *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 184 (Iowa 1980) (noting party failed to give supportive authority for general allegations of error and concluding party's "argument is so indefinite as to preclude our consideration").

*Baker*, 750 N.W.2d at 102-03. We will not accept the task of undertaking Daniel's research and advocacy. *See id. at* 103.

Even if Daniel had not waived the issue, our review of the record reveals that proper proof supports the district court's ruling. The court did not abuse its broad discretion in not finding Karla in contempt.

For all the above reasons we affirm the district court's ruling.

**AFFIRMED.**